Good morning. Deputy Attorney General Oliver Wu on behalf of defendants. This appeal is about the scope of the Coleman Remedial Plan, which concerns mental health treatment for serious mental disorders. The remedial plan defines serious mental disorders to exclude personality disorders. So the district court overstepped when it ordered defendants to implement specific... It did indeed, but then it went on to talk about that the members of the class were covered if they had personality disorders. Did it not? It did, Your Honor. However... Oh, isn't that really what we're talking about here? Whether Judge Mueller was incorrect in interpreting this order to say, Yeah, you've got to treat personality disorders if these people are already members of the class. So I have two responses to that. First, the remedial plan requires treatment for the Coleman class member, but personality disorders are explicitly excluded from that treatment. If, at least it's my understanding, if you take them as a class by themselves, in other words, they're not part of the normal class, and you just say, Okay, this is a new group of people, clearly they're excluded. But as I understood the judge's ruling, what she's saying is, Hey, if you're a member of the class and you have personality disorders, you're covered. And I think that's what she said. Well, I think our interpretation is that she's requiring specific treatment for the personality disorder, but the remedial plan doesn't require that treatment. It only requires treatment for Axis I mental disorders. Unless, unless they're members of the class and personality disorders is one of the plethora of problems that they have. Isn't that what Judge Mueller basically concluded? What Judge Mueller ordered, however, personality disorder treatment is not included. So to put it another way, if a class member has an Axis I mental disorder and a personality disorder, to the extent the personality disorder doesn't rise to the level of medical necessity, the Coleman remedial plan requires defendants to provide treatment for the Axis I mental disorder. But the residual mental health issues, such as personality disorders, are left to the discretion of the clinicians. They're not. So are you saying that if you have a member of the class who also has a personality disorder, that it's up to the discretion of the treating professional whether or not to provide treatment on the personality disorder aspect? Is that correct? Yes. And to be clear, it's important to emphasize that defendants' mental health professionals provide mental health treatment for all class members, regardless whether they have a co-occurring personality disorder. And as a practical matter, the mental health clinicians treat the whole patient and provide individualized treatment. And so when they get a patient with personality disorders, they treat the entire patient and they don't pick and choose what disorders to treat and not treat. Okay, but let's just, again, arguendo. If, when I read the report, I guess what we're talking about, I read the report and conclude that it's a reasonable interpretation of that document that if someone is a member of the class and also has personality disorders, it's a reasonable interpretation of that order to basically order them to be treated under this report. Is that right? So, yes, I have two responses to that. To first directly address your question, the district court could have ordered treatment for medical necessity because medical necessary treatment is covered by the program guide. We don't dispute that. But what the district court did here was it took a step beyond that and stated that defendants are required to treat personality disorders for the class in general, regardless whether it was medically necessary. And is that not a reasonable construction of the report language? No, Your Honor. Why? Because the first, the report identified 470 inmates that may benefit from special treatment. And that language there is important because there are several shortcomings, methodological shortcomings to the report. These class members, these identified class members, have a wide range of personality disorders, some of which aren't treatable. And some class members also didn't have personality disorder diagnoses on the medical, on their medical records. But even if we assume, for the sake of argument, that mental health personality disorder treatment was medically necessary for all 470 inmates, there's still the problem that the district court went beyond ordering medically necessary treatment. When you go back to the beginning, I mean, this is a long ongoing situation, and we have it, of course, in the second case. It's just gone on forever. But the bottom line is what Eighth Amendment rights do incarcerated persons that are covered by this action have to get medical treatment, psychiatric and other treatment. Personality disorders is one of a plethora of things that can happen. The language of the report perhaps was not drafted, it was like it was drafted by a committee. So it wasn't as exact as it might have been. But it's clearly within what was intended to be able to treat people. So if you have somebody with a serious disorder and they either newly manifest personality disorders or they're there all along and they're in kind of a smoldering, it's still part of the treatment that's necessary to help them as members of the class to be treated, right? So with respect, Your Honor, I disagree with that premise. Okay, why? The original 95 judgment was focused on serious mental disorders, and that had a very specific meaning in that case. So you're saying that personality disorders cannot be a serious mental disorder when combined with other things? It wasn't understood as one of those disorders. It was or was not? It wasn't understood as one of the serious mental disorders. In the 95 judgment, the district court made clear that it was concerned with what it called organic brain syndromes, which have now been renamed Axis I mental disorders. Personality disorders are not one of those Axis I mental disorders. The program guide, when it was compiled in 2006, specifically enumerated specific Axis I mental disorders that were targeted for treatment. That's in page 370, volume 4 of the excerpts. On top of that, the program guide also makes clear that its focus and emphasis is on those enumerated disorders. And the reason why personality disorders could not have been included within the scope of the original judgment is because in 1995 and in 2006, personality disorders were not well understood and were largely thought to be untreatable. And so it makes no sense for the district court to have ordered defendants to treat an untreatable condition as part of the constitutional remedy. And so now, even today, some personality disorders still do not have evidence-based treatment. And for some disorders, the treatments that are available are not effective because they require buy-in and participation by the patient. So with that historical context, the treatment, the word treatment in the program guide could not refer to personality disorder treatment. Instead... So in other words, when, 1995 I think you said, personality disorders were essentially viewed as untreatable. Is that what you're saying? Yes. So they couldn't possibly have meant that, but they did conclude that if you're a member of a class, they're supposed to be treated. So if there's some new thing that comes up that makes it essential for them, in order to get appropriate treatment, that you've got to treat personality disorders, why would that not be included? So that sentence in the program guide refers to treatment for access one mental disorders and medically necessary treatment. It doesn't attempt to encompass treatment for all mental health issues, only the serious disorders that are enumerated in the guide. The purpose of that sentence, under our interpretation and our understanding, is that it serves as a safety, as a backstop to prevent defendants from denying mental health treatment to individuals who would otherwise be part of the Coleman class. According to the state, well, how many people are we talking about? If Judge Mueller's order is carried out, how many new situations do we have? It's the same people, right? Same members of the class. It's just a question of treating them for additional conditions. Is that right? Yes, Your Honor. So no new people. I don't have the specific numbers on how many individuals have personality disorders, but the 470 that were identified represents less than half a percent of the entire Coleman class. So essentially what the district court did here was it identified a small problem, a small need, and expanded the remedy dramatically to include all personality disorders suffered by the Coleman class. But if the class, for the only members of the class, in other words, if they were not members of the class, they're not covered for personality disorders, right? That's right, Your Honor. But the program guide specifically excludes personality disorders from the scope of treatment options offered by, required under the Coleman remedy. And so that line in the program guide requiring treatment simply serves to ensure that inmates who have a personality disorder are not denied mental health treatment because of that disorder. They are still provided mental health treatment for their Access 1 mental disorders or medical necessity. So I want to be sure, Anders, that you talked about the 450 or whatever. The judge's order doesn't expand the number of people involved, right? It doesn't, it does, Your Honor, because the judge's order requires defendants to carry out these personality disorder pilot programs. It doesn't make any reference to, it doesn't narrow the scope of its order to the 470 individuals. But they're members of the class though, right? It does. It is limited to class members, but it goes beyond just the 470 individuals identified by the, identified by the unmet needs assessment. How does it go beyond that number? Well, the district court simply stated that defendants are required to provide personality disorder treatment under the Coleman guide. Exactly, but if it applies only to the Coleman class members, how can it be broader than that? I guess I should clarify. So there are Coleman class members with personality disorders beyond just the 470 identified individuals. And so this, this order requires defendants to provide personality disorders class-wide, not just for the 470 people identified by the assessment. Do you have any idea how many people we're talking about in addition of the 450 or 75 or whatever you're talking about? I don't have that number. Okay, so you're, you're guessing it's going to increase the number, but you don't know. Yes, but the, the problem is that the district court simply expanded the scope of the remedy and disregarded the program guide's explicit language that personality disorders are not included within the scope of the remedy. And so by doing that, the court overstepped the bounds of the remedial plan. And there's, the court can reverse for a second reason as well, which is that the district court didn't even mention the PLRA and didn't even attempt to conduct a PLRA analysis. The PLRA, however, is mandatory and the district court must consider whether any prospective relief is necessary, narrow, or at least restrictive, at least intrusive. I'd like to reserve the remainder of my time. All right. Thank you, counsel. Good morning. My name is Lisa Ells. I represent the plaintiff class. The state is simply incorrect that the judgment in this case or the program guide excludes treatment for personality disorders. The only thing that the state has cited is a footnote from the original injunction, which they claim limits treatment to only what are now known as Axis I disorders. However, that is not correct. First of all, the language in that footnote specifically says that some offenders with non-psychiatric disorders may well be sufficiently impaired, I'm sorry, with non-psychotic disorders may be sufficiently impaired to meet the relevant criteria for the class. But more important, and that is very clearly what a personality disorder patient has. They have sufficient impairments that prevent them from functioning without sufficient treatment in a prison setting or otherwise. But more importantly, the context of what they're claiming is this personality exclusion from the judgment is really just the district court saying that the definition of the class and the scope of the injunction, which are for serious mental disorders, is sufficiently clear on its face. So that is the definition of the class. That is the scope of the judgment. It is prisoners with serious mental disorders. There is no dispute here that personality disorders are serious mental disorders. They must be treated. The exclusionary language that they're claiming under the program guide, exactly as you said, Your Honor, Judge Smith, it has nothing to do with an exclusion. It says as long as they're class members, they receive treatment. The program guide itself requires individualized treatment for all of a patient's mental health disorders. This is a mental health disorder. If I understand your friend's comment, he seems to concede that if someone is a member of the class and has personality disorder, they should be treated, if I understood him correctly. Do you have any sense of, are there any additional people that, other than, I don't know whether it's 450 or 475, how many more people are we talking about that would be included in the class that were not before because of the addition of the personality disorder issue? To be clear, they were always members of the class. Right, right. But I mean, how many people, we've got certain number of people being treated now. Yeah. Is the number of the people in the class that are being treated expanding? And if so, roughly how much? No. The number of people being treated is not expanding. So the scope of the study that identified this 470 patients, the clinicians, CDCR's own clinicians, were instructed to look for three things and put people in three buckets. They only looked at class members. They looked at class members with personality disorders that were receiving appropriate treatment. They looked at class members who were not receiving appropriate treatment but could be treated within existing programs CDCR already offered. The only bucket we are talking about is patients that the state explicitly found had personality disorders, were class members, and were not receiving constitutionally adequate care. So it's not an expansion of the class. It's actually the judge funneling down in the remedy to end federal oversight. This is a gap in the remedial plan that has existed for a very, very, very long time. Do you have any idea how many people we're talking about that weren't members of the class but had not been treated? 470 is what I mean. Some of those were previously being treated, though, right? Um, not in that they were all being treated, right? They were all members of the class receiving the standard treatment. But their clinicians said, Actually, our standard treatment that we have isn't sufficient to treat these people. We need something else for these patients. That's the state's basically got people who are being treated. The clinicians, psychiatrists or others are just saying, You know, we really need to treat these people for personality disorders, or we're not gonna be able to help them in effect. Is that right? Correct. Okay. Yeah. And then and then the state, um, you know, first of all, the state never objected to having to study whether these people exist. They know they exist. They know their class members. The history of this case shows this is a very troubled population. Um, they cycle in and out of segregation. They have very high risk of self harm and suicide. 30% of all suicides are patients with personality disorders and C. D. C. R. This is a very troubled group of people who really need mental health interventions. The state identified mental health interventions that exist that are being used in other correctional systems. It was not an error in any way for the court to require them to actually implement the pilot that they said they were gonna do anyway. Correct me if I'm wrong. I my reading of the records so massive, I thought I confess I didn't read ever ever everything. But it seems like Judge Miller just finally just got so frustrated that there was this resistance to everything that she moved forward with this. Is that your perspective as well? I think it's partially that. I also think that the judge is being very carefully to move this case as quickly as possible to ending federal oversight. As I mentioned, this is a gap in the remedy that's existed a long time, but it was never totally clear what the contours of that gap were. And so that's why she instituted the study and defendants studied the patients, identified them very clearly, said they need additional care and then found appropriate care. So you know, one of the things I think the court intended to do by ordering the pilot as opposed to just letting it voluntarily proceed is two things to prevent the state from abandoning the pilot. It's abandoned many, many other appropriate treatments for these patients in the past that it's tried and abandoned. So I think the judge wanted to make sure this remedy actually sticks. And then also, I think the judge wanted to ensure that it was appropriately implemented. And that's why she's ordered the special master to oversee the implementation and make suggestions about any future actions for a larger rollout. Counsel, what's your response to opposing counsel's position that the judge failed to comply with the requirements of the PLRA? Your Honor, I think this is not a case where the judge overstepped her bounds with respect to the PLRA. The Armstrong cases make very clear there's no magic words requirement. What's necessary is that the judge articulate the facts and the circumstances, giving rise to the order. In this case, the facts and circumstances are that there's an ongoing constitutional violation, denial of access to care. So that is very clear. It's also suicide prevention is part of the ongoing constitutional violation in this case. These patients are at very high risk of suicide. She's been very narrow about how she's tailored this. She's let them pick every single aspect of how they want to roll this pilot out. They picked the timeline. They picked which prisons to start with over our objections. They picked which protocol they wanted to implement. All of that was left to the State's discretion. And similarly, the State has, I'm sorry, the judge here has been extraordinarily patient. She's been watching this remedy. We've known, all of us have known about this group of patients for a very long time. They are in every special master report as being, as receiving unconstitutional care. The State doesn't really dispute that. They just identify that they also have access one disorders. That's not really the point. We know they have dual diagnoses, but the point is there's required to treat every single aspect of the mental health condition. And in terms of tailoring, I don't know how you could more narrowly tailor this, frankly. It's a pilot program and it's limited to the patients that the State itself has identified as needing care that didn't exist prior to this order. So I think there's no question that in this case where prior remedial efforts have failed, they've abandoned many promising programs in the past, the court is required to advance remediation of this case and federal oversight. She's taken appropriate steps here to do exactly that. And I think, unless this court has further questions for me. I wanted to ask you about the request for judicial notice. Yes. Was that opposed? No. Any other questions? It appears not, counsel. Thank you. Thank you. So first, I want to clarify a few things. Defendants aren't arguing that the district court's order expanded the class. They were arguing that it expanded the scope of the remedy. And so I think a helpful example would be a hypothetical of a patient with schizophrenia and narcissistic personality disorder. The program guide requires treatment for the schizophrenia. It does not require treatment for the narcissistic personality disorder. What the district court did here was expand the remedy of the program guide to now require defendants to provide that personality disorder treatment. And that's the expansion that defendants are concerned with. But counsel, if I understand correctly, you're talking about a group of people who have suicidal tendencies and so on. It's kind of important, don't you think? So plaintiffs make a big deal about the suicidal tendencies and suicide rates, but that's a red herring. Because the program guide already covers these patients under the medical necessity clause. So we're talking about patients who have personality disorders that do not cause significant dysfunction, do not rise to the level of medical necessity. And how many of the 470 people we're talking about fit into your classification? So for the 470, the assessment didn't make that very clear because... So basically, you're saying, hey, it's your problem, prisoner. We don't know exactly which of you need it, which don't. So you're not gonna get it. So two responses. First is that for the 470, the district court could have issued a narrow order within the scope of the program guide. It could have ordered defendants to provide medically necessary personality disorder treatment. That's not what it did. It ordered treatment across the class with no qualifications on medical necessity, and just simply said that you have to provide personality disorder treatment. But wasn't there an expert opinion that said these, the prisoner could not be completely treated unless, for mental health issues, unless these personality disorders were taken into account, in addition to the other mental health treatment they were given? Not in connection with the 470 identified patients. In fact, the assessment specifically stated that it wasn't clear about what would be effective because some of the patients did not even have a personality disorder in their medical records. I think what the court might be referring to are other special master reports about individual patients. But for those individual patients, in the examples highlighted by plaintiffs, all of those patients needed treatment because it was medically necessary. Why would the, I'm just curious, why would the State be fighting this so hard, to not give mental health treatment to prisoners, even if it's a personality disorder as opposed to an Axis I? Why is the State fighting so hard against giving this treatment to inmates? I'm sorry. My time is up. Please answer. I think there's a practical reason. So first, treatments that's within, that's governed by the Coleman remedy are subject to various additional requirements. They require, they're subject to monitoring by the special master. Any fine-tuning or revamping of these treatment modalities have to be accepted by plaintiffs and the special master and ratified by the district court. Treatment within, governed by the program guide are subject to administrative requirements, such as extra documentation requirements and various other hurdles. Personality disorder treatment or treatment for residual mental health issues don't have to be subject, are not subject to all of those requirements. And defendants' mental health professionals therefore have the flexibility to use their professional judgment in providing this treatment. But the State has been resistant to not just this remedy, but has been resistant to the remedies that have been imposed throughout this litigation. I just don't understand why the State is resistant to doing something that would work to the benefit of the State in having prisoners who don't have these mental issues within the inmate population. I don't understand the rationale, I guess, for it. Can you help me? It's mostly, the rationale is because this would create, this would increase judicial entanglement, judicial management of the mental health system. Isn't it really money? Isn't that what we're really talking about is money? State doesn't want to put more money into this? It's not just money, Your Honor. It's not just money, but money is a big issue, right? It is certainly an issue, but it's more about the micromanagement of the prison system. Well, but if you complied with the orders, then the court would be out of the business of managing. That's what opposing counsel's point is. If the State just complied with the orders that have been entered, the recommendations from the person who's been assigned to oversee the prison, then they would be out of it. Well, I think this appeal kind of demonstrates the difficulty with that argument because the district court is adding on to the orders that defendants have to comply with. It's not just about serious mental disorders and access one mental disorders anymore. The district court has now made it about personality disorders as well. So there's the ever-expanding... But if the State had to comply years ago, we wouldn't be in the situation where the court was, in your view, broadening the issues because the State, the court would have been out of the case. So it's kind of a dilemma of the State's own making that this case has dragged on so long that now more modalities have been, more modalities have been discovered. And the State is, and the court is saying, well, these modalities should now be included. I guess I disagree with the premise of that. Okay. I understand. I understand your position. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the
judges: TASHIMA, RAWLINSON, SMITH